UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

SAIFULLAH AS-SALAAM, *also known as*
LEONARDO GENAO,

                Plaintiff,

    - against -

NEW YORK CITY DEPARTMENT OF PARKS
AND RECREATION, LESLIE WEBSTER, JOHN
BORO, DANIEL BRADY, VINCENT PERRY,
RICHARD MURPHY, JOSEPH BERNSTEIN,
DAVID TERHUNE, THOMAS RUSSO, THE
OVERLOOK FOREST PARK, CORONA PARK,
QUEENS FORESTRY COMPOUND, ARSENAL
WEST 16, and 830 FIFTH AVENUE,

                Defendants.

------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 2 4 2007 ★
P.M. _____
TIME A.M. _____

**MEMORANDUM AND ORDER**

1:02-cv-5646-ENV-LB

**VITALIANO, D.J.**

*Pro se* plaintiff Saifullah As-Salaam ("As-Salaam"), also known as Leonardo Genao,[1] brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII") against the New York City Department of Parks and Recreation ("Department of Parks" or the "City"), Leslie Webster, John Boro, Daniel Brady, Vincent Perry, Richard Murphy, Joseph Bernstein, David Terhune, Thomas Russo (collectively, the "individual defendants"), "The Overlook Forest Park," "Corona Park," "Queens Forestry Compound," "Arsenal West 16," and "830 Fifth Avenue," alleging that he was terminated from his provisional position with the Department of Parks on the basis of his race and religion. Plaintiff identifies

---

[1] On January 8, 2003, a judge of the New York City Civil Court, Queens County granted plaintiff's petition to legally change his name from Leonardo Genao to Saifullah As-Salaam. However, in various documents filed with the Court plaintiff has nonetheless continued to refer to himself as "Leonardo Genao" or "Leo Genao." *See, e.g.,* Dkt. No. 51 (February 28, 2006 letter from plaintiff signed as "Leo Genao").

his race as "Asiatic Black Hispanic" and his religion as "Contemporary Muslim." Defendants now move to dismiss this action pursuant to Rule 12 of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment pursuant to Rule 56.

## I. Facts[2]

As-Salaam began working for the Department of Parks in 1996 in the job title "city park worker." In November 1998, after approximately two years as a city park worker, As-Salaam was provisionally assigned to the position of "assistant gardener." In November 1999, he was reassigned to a different provisional position, this time as a "climber and pruner." Compl. ¶¶ 2, 7(a). As a provisional climber and pruner, As-Salaam performed all the duties of a permanent climber and pruner but, under New York State's Civil Service Law, was subject to removal from this position in the event that a candidate from a competitive civil service list was appointed to fill his line permanently.

In April 2001, As-Salaam took the civil service examination required for appointment as a permanent climber and pruner and passed it. In the ordinary course, on July 25, 2001, the Department of Citywide Administrative Services promulgated a rank-ordered eligibility list for the climber and pruner title. As-Salaam was ranked 24th out of the 53 candidates on the list. However, as As-Salaam was notified, all candidates seeking appointment as a permanent climber and pruner were required also to submit to a personal interview as a pre-requisite to appointment. Compl. ¶ 7(a). Shortly afterward, on August 21, 2001, As-Salaam began a three-month leave of absence from work. Compl. ¶ 7(b). In the interim, As-Salaam's pre-appointment interview was

---

[2]The facts recited are undisputed for purposes of this motion.

2

scheduled for October 16, 2001. Although it is undisputed that he was informed by mail of the date, time, and location of this interview, As-Salaam nevertheless did not appear.[3] Compl. ¶ 7(c). Accordingly, by memorandum dated November 5, 2001, David Terhune, the director of personnel for the Department of Parks, notified him that as a result of his failure to report for his interview he was "ineligible under the Rules of the City Personnel Director for further certification from the civil service list." Molfetta Decl., Ex. A.

When he returned from his three-month leave of absence, on November 13, 2001, As-Salaam resumed his duties as a provisional climber and pruner. Compl. ¶ 8. On November 16, 2001, however, he was given the following notice:

> As a result of the appointments made from the Climber and Pruner civil service list, your position as a Climber and Pruner will be terminated effective close of business November 16, 2001. You will be reassigned to the title Assistant Gardener. Please report to Anokh Singh at Flushing Meadows - Corona Park on Monday, November 19, 2001 at 7:00 a.m. to receive your new assignment.

Molfetta Decl., Ex. B. As-Salaam concedes that a white colleague, Al Martino ("Martino"), was similarly reassigned at the same time from his provisional position of climber and pruner to assistant gardener. Compl. ¶ 11.

On November 19, 2001, As-Salaam reported to work as instructed at Flushing Meadows - Corona Park, Queens. Yet, believing that he had been "unjustly demoted" from his prior position, As-Salaam refused to perform any of his assigned tasks as an assistant gardener and was given a disciplinary citation by his supervisor. *See* Molfetta Decl., Ex. C. The following day was a repeat performance - - As-Salaam reported to work, again refused to perform any tasks,

---

[3]In his complaint, As-Salaam asserts that his failure to appear was because he did not open his work-related mail until October 17, 2001, the day after the scheduled interview. *See* Compl. ¶ 7(c).

3

and was given a second disciplinary citation. *See* Molfetta Decl., Ex. D. The Department of Parks then terminated his employment by letter dated November 20, 2001. Compl. ¶ 13.

Within a month, on December 6, 2001, As-Salaam filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that the Department of Parks had terminated him on the basis of his race and religion as well as in retaliation for speaking out against racism on the job. The EEOC issued a Dismissal and Notice of Rights letter on May 2, 2002, which concluded that the information he provided failed to establish a violation of any statute. Although As-Salaam requested, on May 8, 2002, that the EEOC reconsider its dismissal, the EEOC denied this request in a July 31, 2002 letter. *See* Molfetta Decl., Exs. K-N.

In the meantime, on February 7, 2002, As-Salaam had filed a grievance via his union, District Council 37, alleging that the Department of Parks had "wrongfully terminated" him in violation of Article XVI of the Citywide Contract between the City of New York and the union. Molfetta Decl., Ex. G. This grievance was dismissed at a Step II Conference held on February 20, 2002 upon a finding that no contractual violation had occurred. Molfetta Decl., Ex. H. The parties then entered into an arbitration process. On May 23, 2003, As-Salaam, District Council 37, and the Department of Parks reached a binding settlement agreement in which the Department of Parks agreed to reinstate As-Salaam to the position of assistant gardener and to pay him back wages from November 21, 2001 until the date of his reinstatement. Molfetta Decl., Ex. R. But then, only two weeks after being reinstated as an assistant gardener, As-Salaam resigned from the Department of Parks.

The instant action was filed on October 18, 2002. As-Salaam alleges, in his lengthy complaint, that the Department of Parks engaged in numerous acts of discrimination against him during his employment there based on his race and his religion, culminating in his "demotion"

from provisional climber and pruner to assistant gardener on November 16, 2001 and his termination from the assistant gardener position on November 20, 2001. *See generally* Compl. At an April 10, 2003 conference before Judge Carol B. Amon, however, As-Salaam clarified that because he and his union were then engaged in arbitration regarding his November 20, 2001 termination from the Department of Parks, the instant action concerns only his November 16, 2001 "demotion" from provisional climber and pruner to assistant gardener. *See* Molfetta Decl., Ex. F (transcript of April 10, 2003 conference) at 6-7.

The City on behalf of its Department of Parks now moves to dismiss As-Salaam's complaint for failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment.

## II. Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a court is generally limited to the consideration of the facts as alleged in the complaint, documents attached to the complaint or incorporated into it by reference, and matters of which a court may take judicial notice. *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 154-56 (2d Cir. 2006); *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). However, a court may convert a motion to dismiss into a motion for summary judgment if 1) the moving party presents matters outside of the pleadings, and 2) all parties have been given a reasonable opportunity to present any additional relevant evidence. FED. R. CIV. P. 12(b); *G & A Books, Inc. v. Stern*, 770 F.2d 288, 295 (2d Cir. 1985)(noting that the Second Circuit permits conversion of a motion to dismiss into a motion for summary judgment provided that the non-moving party has had a "reasonable opportunity to meet facts

outside the pleadings"); *see also Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 476-77 (E.D.N.Y. 1998).

In the instant case, the City has proffered documents that make reference to matters outside the complaint. At the time of the proffer, however, the City provided As-Salaam clear notice that the Court might convert its motion to dismiss into a motion for summary judgment and, contemporaneously, notice of his opportunity to submit to the Court any additional evidence pertinent to his claim. *See Notice to Pro Se Litigant* (appended to Molfetta Decl.). Accordingly, the Court may, and does, convert the City's motion to dismiss into a motion for summary judgment.

A motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). The Court's responsibility in assessing the merits of a summary judgment motion is thus not to try issues of fact, but rather to "determine whether there *are* issues of fact to be tried." *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995)(quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984)). In deciding such motions, the moving party bears the burden of demonstrating that there is no genuine issue as to any material fact, *see, e.g., Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005), and the evidence presented will be construed liberally in favor of the party opposing the motion. *See, e.g., Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Once the moving party has met its initial burden of demonstrating the absence of a disputed issue of material fact, the burden then shifts to the nonmoving party to present "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The non-moving party may not then rely solely on "conclusory allegations or unsubstantiated speculation" in order to defeat a motion for summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Thus, if the evidence favoring the nonmoving party is "merely colorable . . . or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986).

### III. Claims Against the Individual Defendants

As an initial matter, the Court observes that individuals cannot be held personally liable for violations of Title VII. *See, e.g., Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995)(noting that individual defendants cannot be held liable under Title VII, even if possessing supervisory powers); *McCoy v. City of New York*, 131 F. Supp. 2d 363, 370 (E.D.N.Y. 2001). Thus, As-Salaam's Title VII claims against the individual defendants must be, and are, dismissed.

### IV. Claims Against the Department of Parks[4]

The New York State Constitution provides that, to the extent practicable, all appointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made on the basis of "merit and fitness" as ascertained by

---

[4]The Court considers As-Salaam's claims against "The Overlook Forest Park," "Corona Park," "Queens Forestry Compound," "Arsenal West 16," and "830 Fifth Avenue," all of which appear to be locations over which the Department of Park exercises control, to be claims against the Department of Parks, that is, against the City of New York.

7

the results of a competitive evaluation process. N.Y. CONST. art. V, § 6. Implementing this mandate, New York's Civil Service Law requires that candidates for competitive positions first pass an examination demonstrating that they have the skills required for a the corresponding job. All passing candidates are then placed on a ranked eligibility list from which, as demand dictates, permanent appointments to open positions are made. *See* N.Y. CIV. SERV. LAW §§ 50, 52, 56, 61 (McKinney 2006).

In the event that there are no candidates available from an unexpired, ranked eligibility list at the time a competitive position needs to be filled, New York's Civil Service Law provides for provisional appointments of the kind As-Salaam received. Because provisional appointees have not been subjected to the normal competitive evaluation procedures, they are considered "mere stop-gap exception[s] of necessity." *Russo v. White*, 775 F. Supp. 639, 644 (S.D.N.Y. 1991)(citing *Koso v. Greene*, 184 N.E. 65, 260 N.Y. 491 (N.Y. 1933)). Provisional appointees, accordingly, may be terminated from their provisional positions "at any time" without a hearing or cause shown, *Kreiger v. New York Transit Authority*, 1997 U.S. Dist. LEXIS 19954, at *4-5 (E.D.N.Y. Nov. 25, 1997), and are, indeed, *required* to be terminated from the provisional position as soon as possible upon the certification of an eligibility list - - meaning no later than the time a permanent candidate is appointed to fill the provisional position. *See* N.Y. CIV. SERV. LAW § 65(3); *see also Cabrera v. City of New York*, 436 F. Supp. 2d 635, 644 (S.D.N.Y. 2006). The sole limitation on the employer's right to terminate, or alternatively, reassign provisional employees in such a case is that the change in status not be "arbitrary or capricious." *Cardona v. Wood*, 673 F. Supp. 120, 122 (S.D.N.Y. 1987). "In New York, this restriction has been construed to mean that such employees may not be terminated for a constitutionally impermissible purpose or in violation of a statutory proscription or policy established by

decisional law." *Russo*, 775 F. Supp. at 645 (citing *Talamo v. Murphy*, 38 N.Y.2d 637, 639, 382 N.Y.S.2d 3, 4, 345 N.E.2d 546, 547 (N.Y. 1976)).

In the instant case, it is undisputed that although As-Salaam had sat for and passed the civil service examination for the climber and pruner title, he, nonetheless, had not appeared for the interview required to assess his suitability for the position. *See* Compl. ¶ 7(c)(admitting that he had "missed the opportunity for an interview"); Molfetta Decl., Ex. A (Department of Parks' notification to As-Salaam that he was ineligible for further certification from the list because he "failed to report to an interview"). Thus, As-Salaam was still classified a provisional climber and pruner as of November 16, 2001, the date he was reassigned to his former position of assistant gardener.

More importantly, and inescapably, on the facts and on the law, plaintiff's termination from his provisional position of climber and pruner was mandated by Section 65 of the Civil Service Law following the certification of the eligibility list and the required appointment of a permanent climber and pruner from this list to the position he had held up until then. District Council 37, indeed, informed As-Salaam that his termination from the position was compelled by law:

> As you know, your position with the [Department of Parks] as a Climber and Pruner was a provisional position. As you also know, you were terminated from that position because an appointment was made to that position from the Civil Service List. Therefore, your termination from that position was lawful . . .

Molfetta Decl., Ex. P. As-Salaam continues to insist, nonetheless, that his reassignment from provisional climber and pruner to assistant gardener was a result of discrimination based on his race and religion, or, alternatively, that it was in retaliation for his speaking out against racism in the Department of Parks, thus violating Title VII.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089 (1981), the Supreme Court set forth the three-step burden-shifting analysis that courts are required to apply when analyzing Title VII discrimination claims. Under *McDonnell Douglas* and *Burdine*, a plaintiff has the initial burden of establishing a prima facie case of discrimination by demonstrating (1) that he is a member of a protected class; (2) that he was qualified for his position; (3) that he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See, e.g., McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 2106 (2000); *James v. New York Racing Ass'n*, 233 F.3d 149, 153-54 (2d Cir. 2000). If a plaintiff establishes such a prima facie case, the burden of production then shifts, in the second step, to the defendant employer to offer legitimate, nondiscriminatory reasons for the adverse employment decision. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Austin v. Ford Models, Inc.*, 149 F.3d 148, 153 (2d Cir. 1998). If the employer successfully articulates such reasons, the burden again shifts, in the third and final step, back to the plaintiff to demonstrate, by a preponderance of the evidence, that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *Fisher v. Vassar College*, 114 F.3d 1332, 1337 (2d Cir. 1997).

Because As-Salaam is not even able to meet his initial and relaxed burden under *McDonnell Douglas* of establishing a prima facie case of employment discrimination, his claims under Title VII clearly fail. Crucially, As-Salaam fails even to offer proof that he was legally "qualified" for the position. Indeed, his own recitation of the facts establishes conclusively that, as a result of his own reckless disregard of work-related mail, he failed to complete the

10

requirements for permanent competitive appointment to the Civil Service position of climber and pruner he had provisionally held and, as a matter of New York public law, was therefore no longer "qualified" to keep his position upon the appointment of a certified candidate to fill it.

Even worse, assuming but for the disability imposed as a matter of Civil Service Law he was otherwise "qualified", As-Salaam adduces no proof from which a reasonable jury could conclude that he was terminated from his provisional position "under circumstances giving rise to an inference of discrimination." That is, putting aside the City's compliance with an unequivocal mandate of state law in its termination of As-Salaam from his provisional position, a plaintiff might still be able to raise such an inference, at least prima facie, "by showing that a similarly situated individual not in [plaintiff's] protected group . . . was treated differently," Cabrera, 436 F. Supp. 2d at 644 (citing Tramble v. Columbia Univ., 1999 WL 61826, at *5 (S.D.N.Y. Feb. 10, 1999), i.e., that the City did not even-handedly comply with the state mandate. As-Salaam has not done so. In fact, his concession that Martino, a white colleague who also served as a provisional climber and pruner, was also reassigned to the exact same provisional title - - assistant gardener - - upon the promulgation of the very same list, not only significantly undermines any such argument, but also actually points to the opposite conclusion - - i.e., that As-Salaam was *not* treated differently on the basis of his religion or race.

All that As-Salaam offers is his own speculation. He offers not a scintilla of evidence that those responsible for his reassignment bore him any ill will because of, or even were aware of, his religion or race or his comments concerning alleged racial discrimination within the Parks Department.[5] Such groundless speculation does not suffice to defeat a motion for summary

---

[5]Although As-Salaam claims that he was the victim of several incidents of racial discrimination while employed by the Department of Parks, *see generally* Compl., he does not even allege that any of the individuals involved in these claimed incidents played a role in his November 16, 2001 reassignment to assistant gardener.

11

judgment. _Edwards v. City of New York_, 2005 WL 3466009, at *15 (S.D.N.Y. Dec. 19, 2005)(citing _Richardson v. Newburgh Enlarged City School Dist._, 984 F. Supp. 735, 744 (S.D.N.Y. 1997)).

Quite simply, a provisional appointee is not permitted by law to hold a position in the civil service to the exclusion of a duly qualified candidate for that position certified from the corresponding civil service eligibility list. In the absence of any indicia of discrimination whatsoever, the Court cannot find As-Salaam has demonstrated, even prima facie, that his statutorily mandated termination from the provisional position of climber and pruner was in violation of Title VII. Accordingly, the Court must, as it does, grant summary judgment in favor of the City of New York and its Department of Parks. And, as previously noted, all claims against the individual defendants are dismissed.

The Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal of this order would not be taken in good faith. Therefore, _in forma pauperis_ status is denied for purpose of an appeal.

The Clerk of the Court is directed to enter Judgment in accordance with this Memorandum and Order and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
July 23, 2007

Eric N. Vitaliano
United States District Judge